No. of Pages 6

JEFFER MANGELS BUTLER & MITCHELL LLP
RICHARD A. ROGAN (Bar No. 67310)
*rrogan@jmbm.com*
BENNETT G. YOUNG (Bar No. 106504)
*byoung@jmbm.com*
Two Embarcadero Center, 5th Floor
San Francisco, California 94111-3813
Telephone:　(415) 398-8080
Facsimile:　(415) 398-5584

Attorneys for Secured Creditor Rabobank, N.A.

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| In re<br><br>GREGORY JOHN TE VELDE,<br><br>　　　　Debtors. | Case No. 18:11651-A-11<br><br>Chapter 11<br><br>**DC NO.: RAR-1**<br><br>**SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EMERGENCY MOTION FOR RELIEF FROM THE AUTOMATIC STAY**<br><br>Date:　　May 8, 2018<br>Time:　　1:30 p.m.<br>Place:　　2500 Tulare Street<br>　　　　　Fresno, CA  93721<br>Dept:　　Courtroom 11, Dept. A<br>Judge　　Hon. Frederick E. Clement |

　　　Secured Creditor Rabobank, N.A. ("Rabobank") respectfully submits this Supplemental Memorandum of Points and Authorities in Support of its limited Emergency Motion for Relief from the Automatic Stay (the "Motion"). Rabobank appreciates the unusual nature of its request for immediate relief, and has carefully limited the scope of the request to only what is absolutely necessary. This limited scope of relief is to permit two auctions to proceed: (1) the dispersal auction of the herd located at Debtor's Lost Valley Farms ("LVF") dairy in Boardman, Oregon; and (2) the auction of approximately 5,100 calves born at LVF and transported by the Debtor to be raised by Frings Calf Ranch in Tulare County, California.

　　　There are three major reasons why the emergency limited relief sought under 11 U.S.C.

§362(f) with regard to the sale of the LVF herd and calves is critical to the estate, the creditors and the movant:

### 1. LVF GENERATES NEGATIVE CASH FLOR AND CANNOT CONTINUE TO CARE FOR THE LIVING ANIMALS MUCH LONGER

The Debtor's Cash Collateral Budget shows that LVF is cash flow negative and runs out of money in just a few weeks. LVF's continuing cash flow problems have resulted in reduced milk production, which in turn results in a lower value for the herd, which is Rabobank's main collateral. Lowry Dec., ¶¶7-10. Moreover, as of yesterday, there was no fresh water and no fuel at LVF. Declaration of Don Howell in Supported Emergency Motion for Relief From the Automatic Stay ("Supp. Howell Dec."), ¶9. Without fresh water, (which has to be trucked in daily at huge expense because the Debtor never built a water line to connect to municipal water sources), LVF cannot even process the milk it produces. Without fuel, essential dairy operations cannot be conducted. A resolution of these problems is not addressed in the Budget, but they are critical to continued dairy operations.

### 2. LVF HAS NO MILK CONTRACT

LVF will have nowhere to send its milk production after May 31, 2018. Before the commencement of the case, Columbia River Processing, Inc. ("CRP") terminated LVF's milk contract. As an accommodation, CRP agreed to accept milk deliveries from LVF during the auction period, but only through May 31, 2018 at the outside, and perhaps not that long. Criteser Dec., ¶¶1-9. Without a milk contract, LVF's operations generate virtually no cash flow and could not pay for feed or employees. Due to lack of storage, LVF must stop milking cows within a few days. Howell Dec., ¶10. The result will be a large drop in the value of the herd, Rabobank's primary collateral. Lowry Dec., ¶¶7-10.

### 3. LVF HAS CONTINUING SERIOUS ANIMAL WASTE MANAGEMENT VIOLATIONS

On March 16, 2018, the Debtor entered into a Stipulated General Judgment with the Oregon Department of Agriculture ("ODA") to address LVF's continuing violation of wastewater disposal requirements. Declaration of William J. Matthews ("Matthews Dec."), ¶2, Ex. A.

1  Among other things, the Stipulated General Judgment specifies particular limits on LVF's
2  production of wastewater and also sets specific requirements for stored liquid manure and process
3  wastewater and Debtor is required to prepare, follow and report on the ODA-approved Animal
4  Waste Management Plan ("AWMP"). Matthews Dec., ¶3.

5      In order to raise cash to enable the filing of this case, the Debtor apparently entered into
6  ground leases of three 125 +/- acre fields plus an option for a fourth 60 +/- acre field.  These fields
7  are all currently planted to Triticale and are part of the land reserved for effluent discharge. The
8  leased land, including the optioned 60 +/- acres, is 435 +/- acres and constitutes 27.19% of the
9  total acreage available for effluent discharge.  On April 30, the lessee plowed under the crops
10 planted on 250 acres of the leased land (collateral of Rabobank).  Debtor's ability to spread its
11 excess effluent has been eliminated and likewise, its ability to comply with the Stipulated General
12 Judgment.  Supp. Howell Dec., ¶¶2-6.  As noted above, Debtor has no on-site source of fresh
13 water, and has to truck in fresh water at considerable cost.  As of yesterday, there was no fresh
14 water and no fuel at LVF.  Supp. Howell Dec., ¶9.  The engineer hired by Debtor to address
15 compliance with the AWMP has resigned.  Supp. Howell Dec., ¶8.  Equally important, the general
16 manager of LVF has given his resignation as of May 15, 2018.  Supp. Howell Dec., ¶7.

17     According to the ODA, the Debtor is out of compliance with the Stipulated General
18 Judgment.  The Debtor is not submitting the documentation required to enable ODA to confirm
19 compliance with paragraph 1 of the Stipulated General Judgment. Matthews Dec., ¶4.  As of May
20 2, 2017, the Debtor was not in compliance with paragraph 1 of the Stipulated general judgment.
21 Matthews Dec., ¶5.

22     Paragraph 5 of the Stipulated General Judgment requires the Debtor to report discharges
23 resulting from the failure of any system.  There have been discharges, but no reports.   Matthews
24 Dec., ¶6. Paragraph 8 of the Stipulated General Judgment states that the disposal of milk must not
25 cause the lagoons to exceed freeboard, but that was violated on May 2, 2018.  Matthews Dec., ¶7.

26     Faced with dwindling cash flow, no milk contract and no general manager, it does not take
27 a crystal ball to see that the Debtor cannot operate LVF in compliance with the Stipulated General
28 Judgment and that its closure is necessary.

## 4. THE LVF CALVES NEED TO BE SOLD PROMPTLY

The Debtor did not finish the necessary construction at LVF and did not build a hospital barn to care for newborn calves. LVF only has hutches for around 200 calves. Declaration of Frank Oliver in Support of Emergency Motion for Stay Relief ("Oliver Dec."), ¶4. There are 25 calves born on average each day at LVF cannot stay at LVF. The result is that calves born at LVF must be transferred to another facility every 8-10 days. Oliver Dec., ¶5.

Unbeknownst to Rabobank until last month, the Debtor was trucking his calves to Frings Calf Ranch in Tulare County and running up a huge tab at $2.40 per calf per day, plus about $3,200 for shipping of each shipment of about 200 calves. Oliver Dec., ¶6. Frings and its assignee now claim a California Livestock Service Lien of approximately $2,400,000. Oliver Dec., ¶7.

In a perfect world, the calves could be brought back to LVF as heifers and raised there, but they cost money to raise and do not produce milk until they are about 24 months old. Oliver Dec., ¶8.

In order to satisfy the Livestock Service Liens and to stop the expense, stay relief should be granted so that the LVF calves should be sold promptly.

## 5. CONTINUED OPERATIONS OF LVF IS NOT SUSTAINABLE AND IS A SERIOUS DETRIMENT TO THE ESTATE

While the limited emergency relief sought would allow Rabobank to recover some value for a significant portion of its collateral, the relief also would greatly benefit the estate by "stopping the bleeding." Debtor's irrational belief that LVF could be sold for more as a going concern is not borne out by the facts. There are no less than $88 million in liens and encumbrances against LVF and its herd (including Rabobank's security interest), but no one is knocking down the Debtor's door with that amount of cash in hand for an immediate, unconditional closing, no doubt because there is no milk contract, no hospital barn to care for calves, no waterline, and there are continuing violations of the Stipulated General Judgment.

In only three weeks, LVF milk can no longer be sold to CRP, and LVF will have no place to deliver and sell its milk or to store fresh milk. It will have to shut down and will have to

liquidate the herd immediately. The only value of LVF is in the assets, and the herd is a living asset that can quickly drop in value unless properly cared for.

That is why prompt removal of the herd under these dire circumstances is the only alternative that does not reduce the value of LVF or of the estate. Auctioneer Chad Lowry notes that a buyer of the land would simply re-stock the herd. Lowry Dec., ¶10.

### 6. THE UNITED STATES TRUSTEE'S OBJECTION MISSTATES THE AUTHORITY OF THE ANCILLARY RECEIVER AND CONFUSES THE LEGITIMATE CONCERNS OF CASE MANAGEMENT WITH THE EMERGENCY NEED TO AUCTION THE LVF HERD AND CALVES

The United States Trustee filed a last minute objection to the Emergency Motion for Stay Relief which focuses on the Receiver as custodian, ignoring every time critical fact noted above. Rabobank and the Debtor stipulated to continuing the Receiver as a temporary custodian because the Debtor was in drug rehabilitation in San Diego and 15,000 head of livestock at LVF and the other two dairies needed care. The United States Trustee simply ignores these concerns and the other dire facts before this Court.

It is noteworthy that the United States Trustee does not address the practical issue of caring for 15,000 head of livestock without a milk contract, fresh water or fuel. It would be nice if this case could proceed leisurely without concern for living animals, serious environmental issues or money, but that is not the world that we address in this case.

The United States Trustee misreads the Oregon Order appointing Mr. Howell as ancillary receiver. Mr. Howell is not in charge of LVF dairy operations. This was crafted with great care because Mr. Howell did not want to inherit the Debtor's environmental liabilities for Animal Waste Management under the Stipulated General Judgment. Any trustee that may be appointed by the United States Trustee should have similar concerns.

Whether or not the Receiver should continue in place as a custodian is not the issue. The critical issue is the granting of stay relief so that the herd can be auctioned and the bleeding of the estate can stop. If stay relief is granted, it will not matter if the Receiver stays in place as custodian.

Rabobank understands that it requests extraordinary relief, but these facts call for it.

Rabobank notes that the only asset sales for which it seeks stay relief are for LVF animals. We urge the Court to act now to lift the stay so that the dispersal auction at LVF and the auction of LVF calves to go forward.

DATED: May 4, 2018　　　　　　　Resectfully submitted,

JEFFER MANGELS BUTLER & MITCHELL LLP
RICHARD A. ROGAN
BENNETT G. YOUNG

By:    /s/ Richard A. Rogan
　　　　RICHARD A. ROGAN
　Attorneys for Secured Creditor Rabobank, N.A.