26
MacCONAGHY & BARNIER, PLC
JOHN H. MacCONAGHY, SBN 83684
JEAN BARNIER, SBN 231683
645 First St. West
Sonoma, CA 95476
(707) 935-3205
Email: macclaw@macbarlaw.com

Attorneys for Chapter 11 Trustee
RANDY SUGARMAN

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### FRESNO DIVISION

| | |
|---|---|
| In re: | **Case No. 18-11651 -A** |
| GREGORY JOHN te VELDE, | **DCN: MB-45** |
| Debtor. | **CHAPTER 11 TRUSTEE'S PLAN OF REORGANIZATION [DATED JULY 12, 2019]** |

**PRELIMINARY STATEMENT**

Randy Sugarman, the duly appointed Chapter 11 Trustee in Bankruptcy of the Estate of Gregory J. te Velde proposes this Plan of Reorganization pursuant to the provisions of Chapter 11 of the Bankruptcy Code.

This Plan sets forth the Chapter 11 Trustee's proposal for the satisfaction of certain Allowed Claims against the Debtor, and the reorganization of the Debtor's affairs. With the Plan, Creditors will receive the DISCLOSURE STATEMENT that provides information concerning the Debtor and the Plan. The Disclosure Statement includes a summary of the Debtor's assets and liabilities, a summary of what the holders of Allowed Claims will receive under the Plan, a discussion of certain alternatives to the Plan, and a summary of the procedures necessary for Confirmation (approval) of the Plan.

The Chapter 11 Trustee hereby requests that the Bankruptcy Court confirm the Plan and do so, if applicable, in accordance with the provisions of Section 1129(b) of the Bankruptcy Code.

## ARTICLE I

### DEFINITIONS

As used in the Plan, the following terms shall have the respective meanings specified below:

"Affiliate" shall have the meaning ascribed to it in Bankruptcy Code Section 101(2).

"Administrative Claim" means a Claim for any cost or expense of administration of a kind specified in Section 503(b) of the Bankruptcy Code, including any actual and necessary costs and expenses of preserving any of the  Estates incurred on or after the Petition Date and through and including the Confirmation Date,  fees due to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6), and compensation for legal or other services and reimbursement of expenses allowed by the Bankruptcy Court under Sections 330 and 331 of the Bankruptcy Code or otherwise.

"Administrative Claims Bar Date" means that date which is thirty (30) days following the Effective Date,  but shall not include any "Section 503(b)(9)" Administrative Claim bar date fixed by the Court.

"Allowed" or "Allowed Amount" means the amount in which any Claim is allowed.  Unless otherwise expressly required by the Bankruptcy Code or the Plan, the Allowed Amount of any Claim

1

does not include interest on such Claim from or after the Petition Date.

"Allowed Administrative Claim" means all or any portion of an Administrative Claim that has either been Allowed by a Final Order or has not been objected to within the time period established by the Plan or by an order of the Bankruptcy Court.

"Allowed Claim", "Allowed Priority Claim", "Allowed Secured Claim", "Allowed Tax Claim", or "Allowed Unsecured Claim", means a Claim of the given type (a) in respect to which a proof of Claim has been filed with the Bankruptcy Court by the applicable Claims Bar Date and to which no objection has been filed within the time fixed by the Plan or the Bankruptcy Court; (b) as to which no proof of Claim has been filed and which has been listed on Schedule D, E or F of any of the Debtors' Schedules and is not listed as disputed, contingent, unliquidated or unknown as to amount, and to which no objection has been filed within the time fixed by the Plan or the Bankruptcy Court; or (c) which is Allowed by a Final Order. No Claim shall be considered an Allowed Claim if (1) an objection to the allowance thereof is interposed by a party in interest within the time fixed by the Plan or the Bankruptcy Court, and such objection has not been overruled by a Final Order, (2) the Claim has already been satisfied, or (3) the Claim is subject to the operation of Bankruptcy Code Section 502(d).

"Available Cash" means any and all cash and cash equivalents owned or held in the Plan Disbursement Account available for payment of Allowed Priority Claims and Allowed Unsecured Claims, after reserving for expenses incurred and anticipated to be incurred as provided for under the Plan.

"Bankruptcy Case" or "Case" means the bankruptcy case commenced by the Debtor filing with the Bankruptcy Court his Voluntary Petition under Chapter 11 of the Bankruptcy Code, Case No. 18-11651.

"Bankruptcy Code" means Title 11, United States Code, § 101, et seq. as in effect and applicable to the Case.

"Bankruptcy Court" means the United States Bankruptcy Court for the Eastern District of California, Fresno Division, or such other court exercising jurisdiction over the Cases.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure promulgated under

28 U.S.C. § 2075, as amended, as applicable to the Bankruptcy Case.

"Chapter 11 Trustee" means  Randy Sugarman,  a third party fiduciary with the rights and obligations set forth in Bankruptcy Code Section 1106, or such successor as  may be appointed by the Court.

"Claim" means any (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

"Claims Bar Date" means (a) with respect to claims other than those held by governmental units, September 4, 2018, (b) with respect to claims held by governmental units, November 3, 2018, and (c) with respect to Rejection Claims, the Rejection Claims Bar Date.

"Claims Objection Date" means the date sixty (60) days after the Effective Date; provided, however, that the Claims Objection Date may be extended by the Bankruptcy Court for cause upon the *ex parte* motion of the Liquidating Trustee.

"Confirmation" means the entry by the Bankruptcy Court of the Order of Confirmation.

"Confirmation Date" means the date on which the Bankruptcy Court enters the Order of Confirmation.

"Confirmation Hearing" means the hearing held by the Bankruptcy Court on confirmation of the Plan as required by Section 1128(a) of the Bankruptcy Code.

"Creditor" means any entity holding a Claim against the Debtor.

"Debtor" means Gregory J. te Velde.

"Disputed Claim" means a Claim against the Debtor (a) as to which a proof of Claim has not been filed and that has been listed in the Debtor's Schedules as disputed, contingent, unliquidated, or unknown as to amount or; (b) as to which an objection or adversary proceeding has been filed within the time fixed by the Bankruptcy Court and which objection or adversary proceeding has not been withdrawn or disposed of by a Final Order.

"Distribution" means, as the context requires: (a) the cash to be provided under the Plan to the holders of Allowed Claims; or (b) the payment, transfer, delivery or deposit of cash or stock interests to Creditors pursuant to the Plan.

"Distribution Date" means any date on which a Distribution is made pursuant to the Plan.

"Effective Date" means the thirtieth (30th) day following the Confirmation Date so long as the Order of Confirmation is not subject to a stay.

"Estate" means the estate created by the commencement of the Bankruptcy Cases and comprised of the property described in Section 541 of the Bankruptcy Code and all property and property interests of the Debtor acquired or arising after the Petition Date, including without limitation the proceeds of any litigation. The "Estate" as used herein shall continue to exist on and after the Effective Date.

"Final Order" means an order entered on the docket by the Bankruptcy Court as to which no timely filed notice of appeal is pending within fourteen (14) days after entry of such order; or, if such appeal is pending, for which no stay pending appeal has been issued.

"G.J. te Velde Dairy" means the real and personal property used for a commercial dairy commonly known as 5850 Avenue 160, Tipton, CA 93272.

"Insider" shall have the meaning ascribed to it in Bankruptcy Code Section 101(31).

"Legal Rate" means the federal judgment interest rate of .27% per annum.

"Liquidating Trustee" means Randy Sugarman, or such other person appointed by the Bankruptcy Court, a third party fiduciary with the rights and obligations set forth in Article VI of this Plan.

"Local Rules" means the Local Rules of the United States Bankruptcy Court for the Eastern District of California, as amended, as applicable to this Bankruptcy Case.

"Lost Valley Farm Sales Proceeds" means the net proceeds of sale of the real and personal property commonly known as the Lost Valley Farm, Boardman, OR, held by the Trustee pursuant to the Bankruptcy Court's "Order Granting Chapter 11 Trustee's Motion to Sell Real and Personal Property Free and Clear of Liens and Interests" entered in the Bankruptcy Case as Dkt. No. 1607.

"<u>Order of Confirmation</u>" or "<u>Confirmation Order</u>" means the order entered by the Bankruptcy Court approving and confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

"<u>Pacific Rim  Dairy</u>" means the real and personal property used for a commercial dairy commonly known as 13406 Road 24, Corcoran,  CA 93212.

"<u>Person</u>" shall have the meaning ascribed to it in Bankruptcy Code Section 101(41).

"<u>Petition Date</u>" means April 26, 2018, the date on which the Debtor filed his Voluntary Petition under Chapter 11 initiating the Bankruptcy Case and on which date relief was ordered in the Bankruptcy Case.

"<u>Petition Date Contract Rate</u>" means the non-default interest rate in effect as of April 26, 2018, for the Secured Creditor in question pursuant to its loan documents.

"<u>Plan</u>" means this   CHAPTER 11 TRUSTEE'S PLAN OF REORGANIZATION, including any modification(s) hereof and/or amendment(s) hereto that comply with Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

"<u>Plan Disbursement Account</u>" means the segregated, interest bearing account described in Section 6.62 of the Plan utilized to pay Allowed Claims.

"<u>Priority Claim</u>" means any Claim entitled to priority pursuant to Section 507(a) of the Bankruptcy Code, but not including an Administrative Claim or a Tax Claim.

"<u>Priority Claims Objection Date</u>" means the date thirty (30) days after the Effective Date.

"<u>Pro Rata</u>" means, with respect to any Distributions to be made to the holder of an Allowed Claim, the proportion that such Allowed Claim bears to the aggregate of all outstanding Allowed Claims in the same Class.

"<u>Rejection Claim</u>" means an Unsecured Claim arising from the Trustee's rejection of an unexpired lease or executory contract pursuant to the Plan or pursuant to an order of the Bankruptcy Court.

"<u>Rejection Claims Bar Date</u>" means the earlier of (a) thirty (30) days following the date of the Effective Date, or (b) thirty (30) days after the rejection date with respect to an executory

5

contract or unexpired lease rejected before the Confirmation Date pursuant to a Final Order.

"Schedules" means the Debtor's schedules of assets and liabilities consisting of Schedule "A" through "J" filed with the Bankruptcy Court pursuant to Section 521(a)(1) of the Bankruptcy Code and Bankruptcy Rule 1007(b), as may be amended at anytime prior to Distribution.

"Secured Claim" means a Claim secured by a lien, security interest, or other charge against or interest in property in which the Debtors has an interest or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value as determined in accordance with Section 506(a) of the Bankruptcy Code of the interest of a holder of such Allowed Claim in the Debtors' interest in such property or to the extent of the amount subject to such setoff, as the case may be.

"Tax Claim" means any Claim against the Debtor entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code, but does not include a Secured Claim for real property taxes.

"Unsecured Claim" means a Claim which is not a Secured Claim.

Other terms are defined below. A term used in the Plan that is not defined in its text  but is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules.

**ARTICLE II**

**DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS**

The Allowed Claims against and Interests in the Debtor are designated and classified below for purposes of the Plan. Except to the extent that the Plan provides otherwise, a Claim or Interest that is properly includable in more than one class is classified in a particular class only to the extent that it qualifies within the description of that class, and is placed in a different class to the extent it qualifies within the description of such different class.

2.1    **Class 1a (Secured Claim of County of Tulare).** Class 1a consists of the Allowed Claim of  the County of Tulare or its assignee, to the extent that such Claim constitutes an Allowed Secured Claim for real property taxes and assessments on certain real property owned by the Estate

commonly known as the G.J. te Velde Dairy.

2.2    **Class 1b (Secured Claim of County of Tulare).**  Class 1b consists of the Allowed Claim of the County of Tulare or its assignee, to the extent that such Claim constitutes an Allowed Secured Claim for real property taxes and assessments on certain real property owned by the Estate commonly known as the Pacific Rim Dairy.

2.3    **Class 2a (Secured Claim of Lower Tule Irrigation District).**  Class 2a consists of the Allowed Claim of the Lower Tule Irrigation District or its assignee, to the extent that such Claim constitutes an Allowed Secured Claim for real property assessments on certain real property owned by the Estate commonly known as the G.J. te Velde Dairy.

2.4    **Class 2b (Secured Claim of Lower Tule Irrigation District).**  Class 2b consists of the Allowed Claim of the Lower Tule Irrigation District or its assignee, to the extent that such Claim constitutes an Allowed Secured Claim for real property assessments on certain real property owned by the Estate commonly known as the Pacific Rim Dairy.

2.5    **Class 3 (Secured Claim of Golden State Farm Credit)**  Class 3 consists of the Allowed Claim of Golden State Farm Credit or its assignee, to the extent that such Claim constitutes an Allowed Secured Claim on certain real property owned by the Estate commonly known as the Pacific Rim Dairy as secured by a first deed of trust.

2.6    **Class 4a (Secured Real Estate Claims of Rabobank, N.A.).**  Class 4a consists of the Allowed Claims of Rabobank, N.A., or its assignee, to the extent that such Claim constitutes an Allowed Secured Claim on certain real property owned by the Estate commonly known as the G.J. te Velde Dairy as secured by a first deed of trust.

2.7    **Class 4b (Secured "Herd and Feed" Claim of Rabobank, N.A.).**  Class 4b consists of the Allowed Claim of Rabobank, N.A., or its assignee, to the extent that such Claim constitutes an Allowed Secured Claim on certain personal property owned by the Estate commonly known as the G.J. te Velde Dairy, Pacific Rim Dairy, and possibly other assets,  as secured by a first position, blanket UCC-1 Financing Statement.

2.8    **Class 5 (Secured Claim of JD Heiskell Holdings, LLC).**  Class 5 consists of the Allowed Claim of JD Holdings, LLC or its assignee, to the extent that such Claim constitutes an

Allowed Secured Claim on certain real and property owned by the Estate commonly known as the G.J. te Velde Dairy and Pacific Rim Dairy as secured by a second position blanket deed of trust and a second position blanket UCC-1 Financing Statement.

2.9 **Class 6 (Secured Claim of Overland Stockyards, Inc.).** Class 6 consists of the Allowed Claim of Overland Stockyards, Inc., or its assignee, to the extent that such Claim constitutes an Allowed Secured Claim on certain property owned by the Estate commonly known as the G.J. te Velde Dairy and Pacific Rim Dairy as secured by a third position blanket UCC-1 Financing Statement.

2.10 **Class 7 (Secured Claim of Boardman Tree Farm, LLC).** Class 7 consists of the Allowed Claim of Boardman Tree Farm, LLC, or its assignee, to the extent that such Claim constitutes an Allowed Secured Claim on the Lost Valley Farm Sales Proceeds.

2.11 **Class 8 (Secured Claim of IRZ Consulting, LLC).** Class 8 consists of the Allowed Claim of IRZ Consulting, LLC, or its assignee, to the extent that such Claim constitutes an Allowed Secured Claim on the Lost Valley Farm Sales Proceeds.

2.12 **Class 9 (Secured Claim of Sineco Construction, LLC).** Class 9 consists of the Allowed Claim of Sineco Construction, LLC, or its assignee, to the extent that such Claim constitutes an Allowed Secured Claim on the Lost Valley Farm Sales Proceeds.

2.13 **Class 10 (Priority Wage Claims).** Class 10 consists of Priority Claims for unpaid wages, salaries, vacation, severance, and sick leave against the Debtor to the extent that they are entitled to priority under Bankruptcy Code Section 507(a)(4).

2.14 **Class 11 (General Unsecured Claims).** Class 11 consists of all Allowed Unsecured Claims against the Debtor, including without limitation all Secured Claims to the extent the Allowed amount of the subject claim exceeds the value of the Creditor's collateral as set forth in Bankruptcy Code Section 506(a), all Rejection Claims, all unsecured Claims of vendors and trade creditors for goods delivered or services provided to the Debtor prior to the Petition Date (except for claims described in Bankruptcy Code Section 503(b)(9)), and all wage claims to the extent that they exceed the Allowed Priority Claim amounts.

2.15 **Class 12 (Administrative Convenience Claims).** Class 12 consists of Allowed Non-

Priority Unsecured Claims in the amount of $5,000 or less.

2.16   **Class 13 (Interest of the Debtor ).**  Class 13 consists of the Interest of the Debtor.

# ARTICLE III

## CLASSES OF CLAIMS NOT IMPAIRED UNDER THE PLAN

The following classes of Claims are not impaired under the Plan and shall receive the following treatment:

3.1   **Class 7( Secured Claim of Boardman Tree Farm, LLC).**  The holder of the Allowed Class 7 Secured shall be paid in full on the Effective Date, or the date its Claim is determined to be an Allowed Secured Claim, whichever is later.

3.2   **Class 8( Secured Claim of IRZ Consulting, LLC).**  The holder of the Allowed Class 7 Secured shall be paid in full on the Effective Date, or the date its Claim is determined to be an Allowed Secured Claim, whichever is later.

3.3    **Class 9( Secured Claim of Sineco Construction, LLC).**  The holder of the Allowed Class 9 Secured shall be paid in full on the Effective Date, or the date its Claim is determined to be an Allowed Secured Claim, whichever is later.

3.4   **Class 10( Priority Wage  Claims).**  Each holder of an Allowed Class 10 Priority Wage Claim shall be paid in full on the Effective Date.

3.5   **Class 12 (Administrative Convenience  Claims).**  Each holder of an Allowed Class 12 Administrative Convenience  Claim shall be paid in full on the Effective Date.

3.6   **Class 13 ( Interest of the Debtor).**  The Debtor shall retain his exempt property to the extent of his exemptions allowable under applicable law and shall be vested with any surplus of the Estate after all Allowed Claims and expenses are paid in full.

# ARTICLE IV

## TREATMENT OF UNCLASSIFIED CLAIMS

Unclassified Claims shall be treated as follows:

4.1   **Allowed Administrative Claims.**  Except to the extent that the holder of a particular

Administrative Claim has agreed to a different treatment of such Claim, each holder of an Allowed

Administrative Claim shall be paid in cash, in full upon the later of (a) the Effective Date, (b) if such

Claim is initially a Disputed Claim, when it becomes an Allowed Administrative Claim, and (c) if

such Claim is incurred after the Petition Date in the ordinary course of the Debtors' business by a

person other than an insider, within such time as payment is due pursuant to the terms giving rise to

such Claim.  Any request for allowance of an Administrative Claim pursuant to Section 503(a) of the

Bankruptcy Code (including an estimation of expenses to be incurred after the Effective Date), other

than by the Trustee's Professionals or the Debtor's Professionals, must be filed on or before the

Administrative Claims Bar Date or the holder of such Claim shall be forever barred from asserting

such Claim or receiving any payment on account of such Claim. Notwithstanding the foregoing,

nothing in this Plan shall be deemed to require the Office of the United States Trustee to file a

request for allowance and payment of statutory fees it may be due.

    4.2    **Tax Claims.**  The holders of Allowed Claims entitled to priority under 11 U.S.C. §

507(a)(8) ("Allowed Tax Claims") will receive deferred cash payments, payable quarterly,

commencing with an initial payment six months from the Effective Date, over a period not

exceeding five (5) years after the Petition Date, the unpaid portion of any such claim to bear interest

at the statutory rate.  The Liquidating Trustee reserves the right to pay Allowed Tax Claim(s) in full

at any time after the Effective Date, provided that all claims entitled to higher priority pursuant to

Bankruptcy Code Section 507(a) are first paid in full.

**ARTICLE V**

**TREATMENT OF CLASSES OF CLAIMS AND INTERESTS
THAT ARE IMPAIRED UNDER THE PLAN**

    The following classes of Claims and Interests are impaired under the Plan and shall receive

the following treatment:

    5.1    **Class 1a (Secured Claim of County of Tulare).**  The holder of the Allowed Class 1a

Secured Claim shall retain its lien under non-bankruptcy law until all taxes have been paid in full

and will receive deferred cash payments, payable semi-annually, commencing with an initial

payment on or before six months from the Effective Date, over a period not exceeding five (5) years

10

after the Petition Date, the unpaid portion of any such claim to bear interest at the statutory rate as set forth in Bankruptcy Code Section 511. The Liquidating Trustee reserves the right to pay the Class 1a Claim in full at any time after the Effective Date. A failure by the Liquidating Trustee to make a payment to the Class 1a Claimant shall be an Event of Default. If the Liquidating Trustee fails to cure an Event of Default as to tax payments within ten (10) days after service of written notice of default from the Class 1a Claimant, then the Class 1a Claimant may enforce the entire amount of its Claim, plus all penalties and interest accrued under state law, against the Liquidating Trustee in accordance with applicable state law remedies.

       5.2     **Class 1b (Secured Claim of County of Tulare).** The holder of the Allowed Class 1b Secured Claim shall retain its lien under non-bankruptcy law until all taxes have been paid in full and will receive deferred cash payments, payable semi-annually, commencing with an initial payment on or before six months from the Effective Date, over a period not exceeding five (5) years after the Petition Date, the unpaid portion of any such claim to bear interest at the statutory rate as set forth in Bankruptcy Code Section 511. The Liquidating Trustee reserves the right to pay the Class 1b Claim in full at any time after the Effective Date. A failure by the Liquidating Trustee to make a payment to the Class 1a Claimant shall be an Event of Default. If the Liquidating Trustee fails to cure an Event of Default as to tax payments within ten (10) days after service of written notice of default from the Class 1a Claimant, then the Class 1b Claimant may enforce the entire amount of its Claim, plus all penalties and interest accrued under state law, against the Liquidating Trustee in accordance with applicable state law remedies.

       5.3     **Class 2a (Secured Claim of Lower Tule Irrigation District).** The holder of the Allowed Class 2a Secured Claim shall retain its lien under non-bankruptcy law until all taxes have been paid in full and will receive deferred cash payments, payable semi-annually, commencing with an initial payment on or before six months from the Effective Date, over a period not exceeding five (5) years after the Petition Date, the unpaid portion of any such claim to bear interest at the rate of four percent (4%) per annum. The Liquidating Trustee reserves the right to pay the Class 2a Claim in full at any time after the Effective Date. A failure by the Liquidating Trustee to make a payment to the Class 2a Claimant shall be an Event of Default. If the Liquidating Trustee fails to cure an

Event of Default as to tax payments within ten (10) days after service of written notice of default from the Class 2a Claimant, then the Class 2a Claimant may enforce the entire amount of its Claim, plus all penalties and interest accrued under state law, against the Liquidating Trustee in accordance with applicable state law remedies.

5.4      **Class 2b (Secured Claim of Lower Tule Irrigation District).**  The holder of the Allowed Class 2b Secured Claim shall retain its lien under non-bankruptcy law until all taxes have been paid in full and will receive deferred cash payments, payable semi-annually, commencing with an initial payment on or before six months from the Effective Date, over a period not exceeding five (5) years after the Petition Date, the unpaid portion of any such claim to bear interest at the rate of four percent (4%) per annum.  The Liquidating Trustee reserves the right to pay the Class 2b Claim in full at any time after the Effective Date.  A failure by the Liquidating Trustee to make a payment to the Class 2b Claimant shall be an Event of Default.  If the Liquidating Trustee fails to cure an Event of Default as to tax payments within ten (10) days after service of written notice of default from the Class 2b Claimant, then the Class 2b Claimant may enforce the entire amount of its Claim, plus all penalties and interest accrued under state law, against the Liquidating Trustee in accordance with applicable state law remedies.

5.5      **Class 3 (Secured Claim of Golden State Farm Credit)**.  The holder of the Allowed Class 3 Secured Claim shall retain its lien under non-bankruptcy law.   On the Effective Date, or the date on which the Class 3 Claim becomes Allowed, whichever is later, the Class 3 Claimant shall receive shall receive a Modified Promissory Note for the remaining balance of its Allowed Claim. This Modified Promissory Note shall be deemed secured by the existing lien and shall bear interest at the fixed rate of the Petition Date Contract Rate amortized over forty (40) years.  The Modified Note shall be payable in monthly installments of principal and interest.  All outstanding principal and interest payable on this Modified Promissory Note shall be due in full four (4) years from the Effective Date, or the closing of the sale of the Pacific Rim Dairy, whichever occurs first.     In the event that there is a default in payment of this Modified Promissory Note, which default is not cured within ten (10) days written notice to the Debtor, the Class 3 Claimant shall be permitted to exercise all of its State law enforcement rights with respect to its collateral.

5.6 **Class 4a (Secured Real Estate Claims of Rabobank)**. The holder of the Allowed Class 4a Secured Claims shall retain its lien under non-bankruptcy law. On the Effective Date, or the date on which the Class 4a Claim becomes Allowed, whichever is later, the Class 4a Claimant shall receive shall receive a Modified Promissory Note for the remaining balance of its Allowed Claims. This Modified Promissory Note shall be deemed secured by the existing lien and shall bear interest at the blended Petition Date Contract Rate [i.e, average interest rate per dollar of outstanding principal balance] amortized over forty (40) years. The Modified Note shall be payable in monthly installments of principal and interest. All outstanding principal and interest payable on this Modified Promissory Note shall be due in full shall be due in full one (1) year from the Effective Date, or the closing of the sale of the G.J. te Velde Dairy, whichever occurs first. In the event that there is a default in payment of this Modified Promissory Note, which default is not cured within ten (10) days written notice to the Debtor, the Class 4a Claimant shall be permitted to exercise all of its State law enforcement rights with respect to its collateral.

5.7 **Class 4b (Secured "Herd and Feed" Claim of Rabobank, N.A.)**. The holder of the Allowed Class 4b Secured Claim shall retain its lien under non-bankruptcy law. On the Effective Date, or the date on which the Class 4b Claim becomes Allowed, whichever is later, the Class 4b Claimant shall receive shall receive a Modified Promissory Note for the remaining balance of its Allowed Claim. This Modified Promissory Note shall be deemed secured by the existing lien and shall bear interest at the Petition Date Contract Rate. The Modified Note shall be payable in monthly installments of interest only. All outstanding principal and interest payable on this Modified Promissory Note shall be due in full four (4) years from the Effective Date, or as lots of the Class 4b Claimant's collateral are sold, whichever occurs first. In the event that there is a default in payment of this Modified Promissory Note, which default is not cured within ten (10) days written notice to the Debtor, the Class 4b Claimant shall be permitted to exercise all of its State law enforcement rights with respect to its collateral.

5.8 **Class 5 (Secured Claim of JD Heiskell Holdings, LLC)**. The holder of the Allowed Class 5 Secured Claim shall retain its lien under non-bankruptcy law. On the Effective Date, or the date on which the Class 5 Claim becomes Allowed, whichever is later, the Class 5

13

Claimant shall receive shall receive  a Modified Promissory Note for the remaining balance of its Allowed Claim. This Modified Promissory Note shall be deemed secured by the existing lien and shall bear interest at the fixed rate five and one-half percent (5.5%) per annum.  The Modified Note shall be payable in monthly installments of interest only.  All outstanding principal and interest payable on this Modified Promissory Note shall be due in full shall be due in full four (4) years from the Effective Date, or the closing of the  sale of the Pacific Rim Dairy, whichever occurs first.    In the event that there is a default in payment of this Modified Promissory Note, which default is not cured within ten (10) days written notice to the Debtor, the Class 5 Claimant shall be permitted to exercise all of its State law enforcement rights with respect to its collateral.

        5.9     **Class 6 (Secured Claim of Overland Stockyards, Inc. )**.    The holder of the Allowed Class 6 Secured Claim shall retain its lien under non-bankruptcy law.   On the Effective Date, or the date on which the Class 6 Claim becomes Allowed, whichever is later, the Class 6 Claimant shall receive shall receive  a Modified Promissory Note for the remaining balance of its Allowed Claim. This Modified Promissory Note shall be deemed secured by the existing lien and shall bear interest at the fixed rate of four and one-half percent (4.50%) per annum.  The Modified Note shall be payable in monthly installments of interest only.  All outstanding principal and interest payable on this Modified Promissory Note shall be due in full four (4) years from the Effective Date, unless paid in full prior to that time.    In the event that there is a default in payment of this Modified Promissory Note, which default is not cured within ten (10) days written notice to the Debtor, the Class 6 Claimant shall be permitted to exercise all of its State law enforcement rights with respect to its collateral.

        5.10     **Class 11 ( General Unsecured Claims)**.  Each holder of an Allowed Class 11 Claim shall receive Pro Rata distributions from Available Cash in the Plan Distribution Account up to the full amount their Allowed Claims with interest at the Legal Rate, on the terms and conditions  set forth in Article 6 below.

## ARTICLE VI

## MEANS FOR IMPLEMENTATION OF THE PLAN

6.1    **Post Confirmation Operations and Management of the Post-Confirmation Estate**.  From and after the Effective Date, the Liquidating Trustee shall manage the Estate and shall have all of the authority to act on behalf of the Estate and the Debtor pursuant to the Liquidating Trust Agreement attached to this Plan and labeled Exhibit 1.  Such management shall include, without limitation, (a) fulfilling the duties and obligations of the Estate under the Plan, (b) prosecuting the Estate Reserved Litigation in his or her own name or in the name of the Debtor at his discretion, (c) abandoning any assets deemed to be burdensome or of inconsequential value to the Estate, (d) otherwise fully administering the Estate as required by the Plan, the Order of Confirmation, the Bankruptcy Code and the Bankruptcy Rules.  Without limiting the foregoing, the Liquidating Trustee will have all of the rights and powers of an estate representative appointed pursuant to Section 1123(b)(3) of the Bankruptcy Code. The Liquidating Trustee shall be entitled to be compensated for services rendered, at the rate of three (3%) of all post-confirmation disbursements made to Creditors; provided however, that the Liquidating Trustee shall not be entitled to any compensation for disbursements from operating revenues from and after January 31, 2020; any compensation due the Liquidating Trustee after that time shall be calculated solely on the proceeds of asset sales. The Liquidating Trustee may resign at any time, or may be removed for cause upon motion by any party in interest to the Bankruptcy Court; provided, that any such resignation or removal shall not be effective until a new Liquidating Trustee has been appointed by the Bankruptcy Court.   Any substitute Liquidating Trustee shall be appointed by the Court on nomination of the Committee.  Unless ordered by the Bankruptcy Court, the Liquidating Trustee shall serve without a guaranty or fiduciary bond.

6.2    **Sales Transactions.**   The Liquidating Trustee will use his best efforts to consummate the pending sale of the G.J. te Velde Dairy to Maricopa Orchards, LLC, or its qualified assignee or overbidder by the scheduled closing date of January 23, 2020 pursuant to the terms of the attached Exhibit 2.  In the event that the Class 4a Claim is not Allowed as of the closing of the sale of the G.J. te Velde Dairy, the Class 4a Claimant shall receive a minimum payment of $26,000,000

from the net proceeds of sale of the real property and methane digester assembly described in Exhibit 2 on account of its Class 4a and 4b Claims, subject to further Order of the Court as to the proper apportionment between the Class 4a and Class 4b claims and with the balance of the net proceeds of sale to be held in a blocked account and not disbursed absent further Order of the Court. The Liquidating Trustee will likewise use his best efforts to consummate a sale of the Pacific Rim Dairy at a fair value as expeditiously as possible, and shall present all bona fide purchase offers for the Pacific Rim Dairy to the Liquidating Trust Board for review and consideration. After the Effective Date, any and all real or personal property owned by the Estate, including without limitation the G.J. te Velde Dairy and the Pacific Rim Dairy, may be sold without further Order of Court.

      6.2.1   **Sale Free and Clear of Disputed Liens and Interests**. The Liquidating Trustee shall retain the right to consummate any sales transactions free and clear of any lien or interest to the maximum extent permissible pursuant to Bankruptcy Code Sections 1123(a)(5)(D) and 363(f), and 363(h).

      6.2.2   **Alternative 363 Motion Procedure**. To facilitate close of escrow of the sale transactions and consummation of the Plan, the Chapter 11 Trustee reserves the right to seek a separate Bankruptcy Court Order authorizing any such sales pursuant to Bankruptcy Code Section 363(f). Any affected lienholder or interest holder shall be given separate notice of any such motion filed by the Trustee to sell free and clear of the subject lien, as set forth in Bankruptcy Rule 6004(c). The Trustee may schedule the hearing on such request concurrently with the Confirmation Date.

      6.2.3   **Discharge of Liens and Adequate Protection**. Upon entry of the Bankruptcy Court Order authorizing the sale free and clear of liens and interests, whether through the Confirmation Order or otherwise, and simultaneously with the closing of the subject sales transaction, any affected lien, interest, or Claim shall be deemed discharged from the subject real property.

      6.2.4   **Exemption from Documentary Transfer Tax** Any sales transactions shall be exempt from all documentary transfer taxes and other stamp taxes described in

Bankruptcy Code Section 1146(a) to the maximum extent described therein. The Court shall reserve jurisdiction under Bankruptcy Code Section 1146(b) to determine whether documentary transfer taxes otherwise arising out of the sales transaction are so exempt. In the event the Liquidating Trustee is required to pay any such documentary transfer taxes prior to such determination in order to timely close the Sales Transaction, any such payment shall be deemed to be with a full reservation of rights and without prejudice to the Estate's right to a refund.

6.3 **Professional Compensation**. The Liquidating Trustee shall be entitled to retain and compensate from Available Cash, such professionals and other Persons as he or she deems fit, including the continued retention of the Debtor's Professionals and/or the Committee's Professionals. The Liquidating Trustee shall be entitled to be compensated for services rendered after the Effective Date at his or her normal hourly rates. All compensation paid to the Liquidating Trustee and other professionals shall be subject to final approval of the Bankruptcy Court on notice to all creditors to be obtained on or before the Court enters the Final Decree closing the Case; provided however, that from and after the Effective Date of the Plan the Liquidating Trustee and any other professionals may be paid 100% of their periodic invoices on an interim basis for post-confirmation services without prior approval of the Court.

6.4 **Post-Confirmation Role of the Committee**. From and after Confirmation, the Committee shall retain the right to seek the examination of any person or entity pursuant to the provisions of Bankruptcy Rule 2004. The members of the Committee shall serve as the initial Liquidating Trust Board pursuant to the terms of Exhibit 1.

6.5 **Distributions.**

6.5.1 **Trustee's Role**. The Liquidating Trustee shall serve as agent for the Estate in making all cash distributions required to consummate the Plan from the Plan Disbursement Account.

6.5.2 **Plan Disbursement Account**. The Liquidating Trustee shall hold any funds transmitted to her in a segregated Plan Disbursement Account for the benefit of holders of

Allowed Claims.

6.5.3 **Timing of Distributions.** The Liquidating Trustee shall make a first Distribution to holders of Allowed Claims as soon as practicable after the Effective Date. Thereafter, the Liquidating Trustee shall make subsequent Distributions in its discretion, but not less than annually. Distributions may be made without further Order of Court.

6.5.4 **Distribution Addresses.** Unless the Creditor has provided the Liquidating Trustee with written notice of a different address, Distributions will be sent to Creditors at the address set forth in the proofs of Claim filed with the Bankruptcy Court. If no proof of Claim is filed with respect to a particular Claim, the Distribution will be mailed to the address set forth in the Schedules.

6.5.5 **Withholding Taxes.** Pursuant to Section 346(h) of the Bankruptcy Code, the Liquidating Trustee shall be entitled to deduct any federal, state or local withholding taxes from any cash payments made with respect to Allowed Claims, as appropriate. The Liquidating Trustee shall be permitted to withhold a Distribution to any Creditor that has not provided information requested by the Liquidating Trustee for the purpose of fulfilling its obligations hereunder. The Liquidating Trustee shall comply with all reporting obligations imposed on it by any governmental unit with respect to withholding and related taxes.

6.6 **De Minimis Distributions.** Notwithstanding any other provision of the Plan, Distributions of less than $10.00 need not be made on account of any Allowed Claim or Allowed Interest; provided that Distributions that would otherwise be made but for this provision shall carry over until the next Distribution Date until the cumulative amount to which any holder of an Allowed Claim or Allowed Interest is entitled to more than $10.00, at which time the cumulative amount of such Distributions will be paid to such holder.

6.7 **Unclaimed Distributions.** Any cash Distributions that remain unclaimed or unnegotiated for ninety (90) days following Distribution or are returned for reasons other than the absence of a current or correct address (unless a current or correct address cannot be determined after reasonable inquiry) shall become the property of the Estate and be considered Available Cash.

6.8    **Reservation of Avoidance Actions and Other Litigation.**  The Estate  reserves all litigation claims,  including without limitation any claims arising out of Bankruptcy Code Sections 363(h),  502, 506, 510, 541, 542, 543, 544, 545, 546, 547, 548, and 549 ("the Estate Reserved Litigation").   Any proceeds of the Estate Reserved Litigation, after payment of compensation and other costs, shall be paid into the Plan Disbursement Account.   The Liquidating Trustee shall have exclusive standing to investigate, prosecute, and, if appropriate, compromise any of the Estate Reserved Litigation.  Any such compromise may be consummated without notice, hearing, or order of the Court.  The Liquidating Trustee  and any other  party in interest reserve the right to object to any and all Claims.

6.9    **Termination of  Chapter 11 Trustee.**   As of the Effective Date, upon the establishment of the Liquidating Trust and the appointment of the Liquidating Trustee under this Plan, the rights and powers of the Chapter 11 Trustee pursuant to Bankruptcy Code Section 1106 shall be deemed terminated, the Chapter 11 Trustee shall be deemed discharged, and all rights and powers formerly exercised by the Chapter 11 Trustee shall be deemed conferred on the Liquidating Trustee.  Within ten days of the Effective Date, the Chapter 11 Trustee shall file a final report, and serve a copy on the Office of the United States Trustee

6.10   **Further Orders.**  Upon motion by the Liquidating Trustee,  on not less than ten (10) days' notice to registered ECF participants entitled to notice in this Case, the Bankruptcy Court may enter such other and further orders as may be necessary or appropriate to facilitate consummation of the Plan.

6.11   **Insurance Policies.**  To the extent any insurance policies exist in which either the Debtor and/or its personnel have an insurable or other interest in or right to make a claim, such policies shall remain available, before and after the Effective Date, to satisfy any and all Claims held by, or asserted against, the Debtor, the Liquidating Trustee, and/or the Debtor's current or former management or other personnel that may be covered by such policies.

6.12   **Post-Confirmation Operating Expenses.**  From and the Effective Date, the Liquidating  Trustee may incur and pay operating expenses, including professional fees for post-confirmation  services by her professionals in the ordinary course of business.

6.13    **Post-Confirmation Reports, Fees, and Final Decree.**

     6.13.1    **U.S. Trustee Fees.** Not later than twenty (20) days after the end of each calendar quarter that ends after the Effective Date (including any fraction thereof), the Liquidating Trustee shall pay to the United States Trustee the quarterly fee for such quarter until this case is converted, dismissed, or closed pursuant to a Final Decree, as required by 28 U.S.C. § 1930(a)(6).

     6.13.2    **Post-Confirmation Reports.** Not later than twenty (20) days after the end of the calendar quarter which ends after the Effective Date, the Liquidating Trustee shall file and serve upon the United States Trustee separate quarterly post-Confirmation status reports in substantially the form provided by the United States Trustee. Further reports shall be filed twenty (20) days after the end of every calendar quarter thereafter until entry of a Final Decree, unless otherwise ordered by the Bankruptcy Court.

     6.13.3    **Final Decree.** Once the Plan is substantially consummated, the Chapter 11 Trustee shall file an application for a Final Decree as provided in the Local Rules.

6.14    **Default.** A material breach of any of the foregoing provisions by the Liquidating Trustee shall be deemed a default in the Plan. Upon any purported default, any party in interest may give written notice to cure to the Liquidating Trustee. If such purported default is not cured within 10 days from the date of said notice, such party in interest may move for dismissal or conversion of the case to Chapter 7. The Liquidating Trustee and any other party in interest may oppose such motion.

## ARTICLE VII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1    **Executory Contracts Rejected.** All executory contracts and unexpired leases, unless previously rejected, shall be deemed assumed as of the Effective Date.

7.2    **Adding and Removing Executory Contracts and Unexpired Leases.** The provisions of this Article VII may be amended, with appropriate notice to those parties in interest directly affected, at any time prior to the conclusion of the hearing on Confirmation of the Plan, to

add or remove executory contracts and unexpired leases to be assumed, assumed and assigned, or rejected pursuant to the Plan.

7.3 **Effect of Assumption of Executory Contracts and Unexpired Leases.** All executory contracts assumed prior to Confirmation or pursuant to the Plan and not otherwise rejected pursuant to the Plan shall remain in full force and effect, be unimpaired by the Plan except as specifically modified by the Plan and the Order of Confirmation, and be binding on the parties thereto.

7.4 **Rejection Claims.** Rejection Claims shall be classified as Class 6 Claims. The holder of a Rejection Claim shall file with the Bankruptcy Court a proof of Claim relative to such Rejection Claim on or before the Rejection Claims Bar Date or be forever barred from asserting any such Claim or receiving any payment or other Distribution on account of such Claim.

## ARTICLE VIII

## PROOFS OF CLAIM; OBJECTIONS

8.1 **Evidence of Claim.** For purposes of any Distribution under the Plan, the Liquidating Trustee shall have no obligation to recognize any transfer of Claims or Interests occurring on or after the first Distribution Date. The Liquidating Trustee and his professionals shall be entitled to recognize and deal for all purposes with only those Creditors of record with the Bankruptcy Court as of the first Distribution Date.

8.2 **Amendments to Claims.** Except as provided by the Plan or as otherwise permitted by the Bankruptcy Court, the Bankruptcy Rules or applicable law, upon expiration of the applicable bar date, proofs of Claim and proofs of interest may not be filed or amended except for amendments to proofs of Claim to decrease the amount or priority thereof.

8.3 **Claim Objections.** An objection to a Priority Claim shall be filed no later than the Priority Claims Objection Date. An objection to any other Claim shall be filed no later than the

Claims Objection Date. The Liquidating Trustee shall have the primary responsibility to review Claims filed against the Debtor and/or the Estate, to file objections as appropriate, and to resolve Disputed Claims.

8.4     **Distributions**. Notwithstanding any provision of the Plan specifying a date or time for payments or Distributions of consideration hereunder, payments and Distributions in respect of any Claim that at such date or time is disputed, unliquidated or contingent, shall not be made until a Final Order with respect to an objection, estimation or valuation of such Claim is entered by the Bankruptcy Court, whereupon appropriate Distributions shall be made promptly.

**ARTICLE IX**

**RETENTION OF JURISDICTION**

The Bankruptcy Court shall retain exclusive jurisdiction of the Bankruptcy Case (a) to enforce the provisions, purposes, and intent of the Plan; (b) to hear and determine any adversary proceedings or contested matters filed in or related to the Cases, including the Estate Reserved Litigation; (c) to hear and determine the allowance or disallowance of Claims, (d) to fix and approve allowance of compensation and other Administrative Claims, including, if appropriate, payments to be made in connection with the Plan, (e) to adjudicate controversies arising from the terms of the Plan, (f) to hear and determine any proposed modifications of or amendments to the Plan to the extent permitted by Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, (g) to enforce or interpret the provisions of the Plan, the Order of Confirmation or any order entered by the Bankruptcy Court in the Bankruptcy Case, (h) to facilitate the consummation of the Plan, including without limitation (i) the approval of any settlement (j) the entry of a separate order authorizing the sale and/or refinancing of the Selected Assets free and clear of liens and interests, (k) the appointment of a Liquidating Trustee or Successor Chapter 11 Trustee, (l) to consider such other matters as may be set forth in the Plan or the Order of Confirmation, (m) to hear and determine any Claim of any Persons of any nature whatsoever against the Chapter 11 Trustee, the Debtor, the Debtor's Professionals, and/or the Trustee's Professionals arising in or related to the Case, (n) to

adjudicate the Debtor's entitlement to a discharge, and (o) to enter a Final Decree closing the Bankruptcy Case(s).  If closed, the Bankruptcy Case(s) may be reopened at any time to facilitate the provisions of this Article.

## ARTICLE X

## EFFECT OF ORDER OF CONFIRMATION

As of the Effective Date, the effect of the Order of Confirmation shall be as follows:

10.1    **Binding Effect of Plan.**  The provisions of the confirmed Plan shall bind the Debtor, the Estate, any entity acquiring property under or otherwise accepting the benefits of the Plan, every Creditor, and every Interest holder, whether or not such entity has filed a proof of Claim or Interest in the Bankruptcy Case, whether or not the Claim or Interest of such entity is impaired under the Plan, and whether or not such Creditor or entity has accepted or rejected the Plan.

10.2    **Preliminary Injunction.**   From  and after the Effective Date, except as otherwise provided for herein or in the Order of Confirmation, as long as there is no material default in the Plan,  all Persons who have held, currently hold or may hold a debt, Claim or interest against the Debtor, the  Estate,  the Chapter 11  Trustee,   the Liquidating Trustee, or their Professionals, or their respective property, including the property transferred pursuant to this Plan are permanently enjoined from taking any of the following actions on account of any such debt or Claim : (a) commencing or continuing in any manner any action or other proceeding against Debtor,  the Estate, the Chapter 11 Trustee, the Liquidating Trustee,  their Professionals, or their respective property; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Debtor, the Estate, the Chapter 11  Trustee, the Liquidating Trustee, or their Professionals ; (c) creating, perfecting, or enforcing any lien or encumbrance against the Debtor, the Estate, the Chapter 11 Trustee, the Liquidating Trustee, their  Professionals, or their respective property including the property transferred pursuant to this Plan;  (d) asserting any setoff, right of

subrogation, or recoupment of any kind against any obligation due to the Estate or the Debtor; and (e) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan or the Order of Confirmation.

10.3 **Limitation of Liability.** On and after the Effective Date, neither the Chapter 11 Trustee, the Liquidating Trustee, nor any of her agents, employees, and Professionals, shall have or incur any liability to any Person for any authorized act taken or authorized omission made in good faith in connection with or related to the Bankruptcy Case(s) or the Estate, including objections to or estimations of Claims, disposition of assets, or formulating, determining not to solicit acceptances or rejections to, or confirming the Plan, or any contract, instrument, release, or other agreement or document created in connection with the Plan. Nothing herein shall be deemed to release any party from any claims for willful misconduct, breach of fiduciary duty, or gross negligence.

10.4 **No Third Party Releases**. For avoidance of doubt, nothing in this Plan shall be deemed to constitute a release of any third party jointly and severally liable with the Debtor or the Trustee on any Claim.

## ARTICLE XI

## DISCHARGE OF THE DEBTOR

11.1 **Grant of Discharge.** Confirmation of the Plan shall not automatically operate to grant the Debtor a discharge of his debts. The Debtor shall have the right to seek a discharge of his debts on noticed motion to all parties in interest at any time before the entry of a Final Decree on a showing that he has complied with the provisions of Bankruptcy Code Section 1141(d)(5); provided however, that nothing herein shall bar any party from filing a timely Complaint Objecting to Discharge pursuant to the provisions of Bankruptcy Code Section 727. Any discharge granted the Debtor shall be effective as to each Claim regardless of whether a proof of claim therefor was filed, whether the Claim is an Allowed Claim, or whether the holder thereof votes to accept this Plan.

11.2 **Effect of Discharge.** Any discharge provided for under this Plan shall have the effects set forth in the Bankruptcy Code including, but not limited to:

(a) voiding any judgment obtained against the Debtor on any discharged debt; and;

(b) operating as an injunction against the commencement or continuation of any action to collect, recover, or offset either any discharged debt from the Debtor, or any property of the Debtor, except as otherwise permitted by this Plan, the Bankruptcy Code, or order of the Court.

## ARTICLE XII

## MISCELLANEOUS

12.1 **Plan Interpretation.** The headings contained in the Plan are for convenience of reference only and shall not limit or otherwise affect in any way the meaning or interpretation of the Plan. All references in the Plan to the singular shall be construed to include references to the plural and vice versa. All references in the Plan to any one of the masculine, feminine or neuter genders shall be deemed to include references to both other such genders. All exhibits attached to the Plan are, by this reference, hereby incorporated into the Plan. All references in the Plan to a Section or an Article shall mean the appropriately numbered Section or Article of the Plan. Whenever the Plan uses the term "including," such reference shall be deemed to mean "including, but not limited to."

12.2 **Modification.** The Chapter 11 Trustee may propose amendments to or modifications of the Plan under Section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019 at any time prior to the conclusion of the hearing on Confirmation of the Plan. After the Confirmation Date, the Liquidating Trustee may modify the Plan in accordance with Section 1127(b) of the Bankruptcy Code and Bankruptcy Rule 3019.

12.3 **Waiver.** After the Confirmation Date, except as otherwise specifically set forth in the Plan, any term of the Plan may be waived only by the party or parties entitled to the benefit of the term to be waived.

12.4   **Reservation of Rights**.  Neither the filing of the Plan nor any statement or provision contained in the Plan or in the Disclosure Statement, nor the taking by any party in interest of any action with respect to the Plan, shall (a) be or be deemed to be an admission against interest, and (b) until the Effective Date, be or be deemed to be a waiver of any rights any party in interest may have (i) against any other party in interest, or (ii) in any of the assets of any other party in interest, and, until the Effective Date, all such rights are specifically reserved.  In the event that the Plan is not confirmed or fails to become effective, neither the Plan nor the Disclosure Statement nor any statement contained in the Plan or in the Disclosure Statement may be used or relied upon in any manner in any suit, action, proceeding or controversy within or without this Bankruptcy Case involving the Trustee or the Estate, except with respect to Confirmation of the Plan.

DATED this 12th day of July, 2019.

MacCONAGHY & BARNIER, PLC

By: _/s/ John H. MacConaghy_             _/s/ Randy Sugarman_
    Randy Sugarman                Randy Sugarman, Chapter 11 Trustee
    Attorneys for Randy Sugarman,
    Chapter 11 Trustee